**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                      :

BOISEY CALDWELL,                 :

                       :

               Plaintiff,    :   19-CV-6534 (OTW)

                       :

         -against-       :   **OPINION AND ORDER**

                       :

COMMISSIONER OF SOCIAL SECURITY,  :

                       :

            Commissioner.  :

                       :

------------------------------------------------------------x

**ONA T. WANG, United States Magistrate Judge:**

I.      **Introduction**

     Plaintiff Boisey Caldwell commenced this action pursuant to 42 U.S.C. § 405(g),

challenging the decision by the Commissioner of Social Security (the "Commissioner") denying

Plaintiff's application for disabled adult child ("DAC") benefits payments under § 420(d)(1)(b) of

the Social Security Act. Plaintiff, who was born in 1964, applied for DAC benefits when he was

52, alleging childhood disabilities that would entitle him to survivor benefits on behalf of his

deceased father, who passed away in 2013, when Plaintiff was 49. The Commission denied

benefits on the grounds that there was no evidence to substantiate a childhood disability. The

Commissioner has moved for judgment on the pleadings. (ECF 25). For the reasons set forth

below, the Commissioner's Motion for Judgment on the Pleadings is **GRANTED** and the case is

dismissed.

II.   **Facts**

**A. Procedural Background**

Plaintiff filed an application for Child's Insurance Benefits, survivor claim on behalf of

Joseph Caldwell, his late father, on July 21, 2016. (Tr. 138-141). Plaintiff claims that he is

seeking Joseph Caldwell's "social security benefits for the abuses that I suffered" because

Joseph Caldwell purportedly assaulted Plaintiff's mother. (Tr. 178). Plaintiff already receives

adult social security. (Tr. 170, 265, ECF 32 at 1). Joseph Caldwell passed away in 2013, when

Plaintiff was 49. (Tr. 79).

Plaintiff argued disability based on physical and mental impairments, including diabetes,

glaucoma, post-traumatic stress disorder ("PTSD"), and bipolar disorder. Plaintiff further argued

that the disability onset date is his birthday, March 18, 1964.[1] (Tr. 140, 141, 161, 182).

The Social Security Administration ("SSA") denied Plaintiff's application on September 6,

2016 on the basis that there were no recoverable medical records supporting disability during

the period between 1982 and 1986. (Tr. 79, 82). On October 25, 2016, Plaintiff requested a

hearing before an administrative law judge ("ALJ"). (Tr. 90). Plaintiff subsequently appeared,

unrepresented, at the June 28, 2018 hearing in front of ALJ Gina Pesaresi. A vocational expert,

Dale Elizabeth Pasculli, was on the line but did not testify. (Tr. 28, Tr. 74). ALJ Pesaresi found

that January 1, 2007 was the disability onset date. (Tr. 11). ALJ Pesaresi found that Plaintiff was

not disabled before 1986, when Plaintiff turned 22, because there were no medical signs or

---

[1] The October 18, 2018 decision states that Plaintiff asserted a disability onset date of January 1, 2007. (Tr. 9, 11). Plaintiff does not clearly specify when each alleged disability developed.

laboratory findings to support the existence of any medically determinable impairment before he attained the age of 22. (Tr. 9-13).

On October 22, 2018, Plaintiff subsequently requested a review of the ALJ's decision to the SSA Appeals Council. (Tr. 134). The request was denied on June 28, 2019 on the basis that "there was no reason under [the SSA's] rules to review the Administrative Law Judge's decision." (Tr. 1-3).

Plaintiff subsequently filed this action, seeking review of the ALJ's decision. In response, the Commissioner argued that the Court should deny Plaintiff's claim because "there were no medical records showing that the claimant had been hospitalized, diagnosed or treated for any impairment prior to the age of 22." (ECF 25 at 8). The Commissioner claims that ALJ Pesaresi was not required to find the existence of an impairment based solely on Plaintiff's own testimony and written submissions. (ECF 25 at 9). Plaintiff did not formally oppose the Commissioner's motion for judgment on the pleadings, but instead replied in three different letters, which the Court will construe as his response to the Commissioner's motion. (ECF 27-29).

### B. Plaintiff's Social Background

#### 1. Facts Taken from Plaintiff's Submissions & Testimony

Plaintiff was born on March 28, 1964. (Tr. 257). Plaintiff's mother gave birth to him after she was purportedly raped by his father, and Plaintiff suffered constant physical and emotional abuse from his mother and brother. (Tr. 222). Plaintiff's father was incarcerated after Plaintiff's

birth and was not greatly involved in Plaintiff's upbringing. (Tr. 45, 174, 223). Plaintiff noted

that there was "absence" and "neglect" from his father. (Tr. 174).

Plaintiff did not have steady housing as a child and experienced homelessness. When

Plaintiff was around eight or nine, he ran away from home and was sheltered at Covenant

House. (Tr. 222). When Plaintiff was nine, he was incarcerated at Spofford Detention Center.

(Tr. 168). Between ages 10 to 13, he attended Lewis and Clark School in the Bronx from 1974 to

1977. (Tr. 162). Between ages 13 and 14, he lived with his mother at MacDougall Group Home

in East New York. (Tr. 223). When he was 15, he lived with his uncle, and his father occasionally

visited him. (Tr. 223). Plaintiff claimed that he was incarcerated multiple times between 1981

and 1993, when Plaintiff was 13 to 25. (Tr. 307). Plaintiff continued to be in the Department of

Corrections' custody for three years from 1993 to 1996. (Tr. 224).

He received a General Education Diploma ("GED") in May 1995 from Marcy Caldwell

Correctional Facility ("Marcy") and also received other vocational training. (Tr. 162, 224). The

record reflects spotty adult employment. (Tr. 147-52).

### C. Medical Background

#### 1. Medical History Before the Age of 22 (Before March 28, 1986)

The following is based on Plaintiff's written submissions, his testimony at the hearing,

and the information he reported to physicians who had received and examined him as a

patient. The record does not include medical records of Plaintiff before he turned 22. The SSA

requested records from the NYC Health and Hospitals Corp, ACS, Misericordia Hospital Medical

Center, and Harlem Hospital Center. (Tr. 78). The SSA, did not, however, receive any childhood

medical records in return. SSA also requested records from when Plaintiff was incarcerated

from 1982 to 1986, but did not receive records. (Tr. 328-29).

       a.  *Facts taken from Plaintiff's submissions & testimony*

Plaintiff wrote multiple letters to the SSA. *See, e.g.*, Tr. 177-83 (July 2016 letter repeated

at 222-24, 232-35, 276-80), 207-09, 218-225. In these letters, Plaintiff states that he sustained

multiple injuries before the age of 18. He claimed that he had a hernia repair at the age of 10.

(Tr. 223). He fell off a roof when he was 11. (Tr. 223). He fell and injured his left shoulder when

he was 12. (Tr. 223). In October 1980, he was comatose for three days. (Tr. 223). When he was

incarcerated at Rikers Island in 1981, he also went to Harlem Hospital to treat his psychosis.

(Tr. 224).

Plaintiff testified that he started taking lithium (for treating bipolar disorder), Haldol

(anti-psychotic medicine), and Cogentin (anti-tremor medicine) all before he turned 21. (Tr. 33-

34).

    **2.  Medical History After the Age of 22 (After March 28, 1986)**

There are medical records in the record after Plaintiff turned 22 on March 28, 1986, but

these are not recapped here, because Plaintiff applied for benefits based on a childhood

disability. The one exception is the 2012 report by Dr. Patel, because Plaintiff discussed his

childhood with Dr. Patel.

       a.  *Vishal Patel, M.D., Diagnostic Clinician at Center for Urban Community*
           *Services – 2012 Visit*

On January 13, 2012, Plaintiff saw Dr. Patel for a psychiatric assessment at the Center

for Urban Community Services ("CUCS") as part of the Project for Psychiatric Outreach for the

Homeless. (Tr. 257). Dr. Patel performed a 60-minute interview for a routine psychiatric evaluation on Plaintiff for housing and treatment purpose. (Tr. 257).

Plaintiff stated to Dr. Patel that he had an extensive history of physical abuse suffered at the hands of his mother and his siblings. (Tr. 257). As a result, he has manic and depressive moments. (Tr. 257). Plaintiff reported that he had been hospitalized for psychiatric issues over ten times, and attempted suicide multiple times, most recently in 2004 when he cut his wrist with a razor. (Tr. 266).

Plaintiff reported a history of childhood drug and alcohol use. (Tr. 258-259). By his own report, since the age of five, Plaintiff has been consuming alcohol and smoking cigarettes and marijuana. Plaintiff also reported past use of crack cocaine and PCP. (Tr. 258-259).

During the assessment, Plaintiff reported having flashbacks of childhood abuse and a history of manic and depressive moments. (Tr. 257). He claimed that he received psychotherapy at International Center for the Disabled and recently finished a MICA program there (treating chemical abuse for mentally ill adults) before seeing Dr. Patel. (Tr. 258).

Dr. Patel diagnosed Plaintiff with PTSD; mood disorder; cannabis, alcohol, and cocaine dependence in full sustained remission; nicotine dependence; personality disorder; type II diabetes; glaucoma; and traumatic brain injury. (Tr. 261). Dr. Patel noted that "I could not elicit any [history of] clear prior hypomanic, manic, or depressive episodes." (Tr. 257). Dr. Patel reported that Plaintiff's attitude was calm, cooperative, and engaged; his psychomotor activities were normal; his thought process was linear to circumstantial; his mood was fine; his affect was fully reactive; his cognition was intact; his insight and judgment were fair; the risk of acute psychiatric symptoms was low. (Tr. 260-261). Dr. Patel observed that without ongoing

treatment Plaintiff would have difficulty in maintaining normal social relations and continuing work activities. (Tr. 261). Dr. Patel recommended that Plaintiff continue to take Trazodone for insomnia and to receive psychotherapy and that Plaintiff stop taking Trileptal. (Tr. 262). Nowhere in the report does Dr. Patel provide a post-hoc diagnosis of any childhood disabilities.

### D. ALJ Pesaresi's Decision

ALJ Pesaresi denied Plaintiff's claim for DAC benefits. At steps one to two, ALJ Pesaresi found that Plaintiff had attained age 22 as of January 1, 2007, the alleged onset date, and had not engaged in any substantial gainful activity since January 1, 2007. (Tr. 11).

At step three, ALJ Pesaresi found that "there were not medical signs or laboratory findings to substantiate the existence of a medical determinable impairment." (Tr. 12). ALJ Pesaresi found that although Plaintiff reported an extensive history of childhood abuse and substance abuse, and psychiatric issues, "the only medical evidence in the record for the relevant period is in a 2012 report documenting this subjective psychiatric history." (Tr. 12 (referring to Dr. Patel's report)). ALJ Pesaresi indicated that Plaintiff was incarcerated at Marcy Caldwell Correctional Facility from 1983 to 1987. (Tr. 13). ALJ Pesaresi noted that "the response to an attempt by [the SSA] to obtain records from that period indicated that any records from [that] period have been destroyed." (Tr. 13 (citing Tr. 330 (letter from New York State Corrections and Community Supervision to the SSA)). Accordingly, she found that "there is no adequate evidence to establish that a medically determinable impairment existed during the relevant period, or to determine what limitations, if any, existed at that time." (Tr. 12). In arriving at this conclusion, ALJ Pesaresi relied primarily on Plaintiff's self-report, his testimony at the hearing, and the absence of objective medical record about Plaintiff's medical conditions

from 1982 to 1986. (Tr. 12-13). Finding no medically determinable impairment, ALJ Pesaresi did not engage in further steps of the analysis. (Tr. 9-13).

### III.    Analysis

### A.  Applicable Legal Principles

#### 1.  Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make it clear that the moving party is entitled to judgment as a matter of law. However, the Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. Substantial evidence is more than a mere scintilla but requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *see also Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). This is a "very deferential standard of review." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must accept the ALJ's findings unless "a reasonable factfinder would *have to conclude otherwise*." *Id.* (citations omitted).

#### 2.  Disabled Adult Child Entitlement

To qualify for child's survivor insurance benefits from a deceased parent, an applicant must meet four basic criteria—that is, he or she must: (1) qualify as a "child" of the insured, as defined by the Social Security Act; (2) be unmarried; (3) be below a specified age limit (18 or 19) or be under a disability that began before he or she reached age 22; and (4) be "dependent" on the insured, as statutorily defined, at the time of the insured's death. *Astrue v. Capato,* 566 U.S.

541, 546 (2012) (citing 42 U.S.C. § 402(d)(1)); *see also Doerr v. Colvin*, No. 13-CV-429 (JTC), 2014 WL 4057446, at *3 (W.D.N.Y Aug. 13, 2014).

A claimant is "disabled" within the meaning of 42 U.S.C. § 423(d) when he can show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). The impairment must be of "such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

### 3. Determination of Disability

In the context of determining eligibility for disabled adult child's benefits, the term 'disability' has substantially the same definition as it does in traditional, adult disability cases." *Hanlon v. Saul*, No. 18-CV-7090 (PKC), 2020 WL 999900, at *2 (E.D.N.Y. Mar. 2, 2020) (citing *Doerr*, 2014 WL 4057446, at *3); *see also Priel v. Astrue*, 453 F. App'x 84, 86 (2d. Cir. 2011) (applying the definition of disability for adults and a five-step inquiry set up to the analysis of DAC benefits).

To be awarded disability benefits, the Social Security Act requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The ALJ makes this determination through a five-step evaluation process, for which the burden rests on the Plaintiff for the first four steps and

only after all four steps are satisfied does the burden then shift to the Commissioner for the

final step. 20 C.F.R. § 416.920; *see also Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019).

First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful

activity. Second, the ALJ must find that Plaintiff's impairment is so severe that it limits his ability

to perform basic work activities. Third, the ALJ must evaluate whether Plaintiff's impairment

falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 ("Listings")

such that he may be presumed to be disabled. Absent that, the ALJ must then determine the

claimant's RFC, or his ability to perform physical and mental work activities on a sustained

basis. Fourth, the ALJ then evaluates if Plaintiff's RFC precludes him from meeting the physical

and mental demands of her prior employment. If Plaintiff has satisfied all four of these steps,

the burden then shifts to the Commissioner to prove that based on Plaintiff's RFC, age,

education, and past work experience, Plaintiff is capable of performing some other work that

exists in the national economy.

### 4.  Treating Source Rule

The "treating source rule," also known as the "treating physician rule," is a series of

regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be

accorded a treating source's opinion.[2] A treating source's opinion will be given controlling

weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in . . . [the] record."

---

[2] Although not relevant here, the Court notes that the regulations governing the "treating physician rule" recently changed as to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1527, 404.1520c; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819, at *5844, *5867-68 (Jan. 18, 2017); a*ccord Cortese v. Comm'r of Social Sec.*, 16-CV-4217 (RJS), 2017 WL 4311133, at *3 n.2 (S.D.N.Y. Sept. 27, 2017).

20 C.F.R. § 404.1527(c)(2); *see also Estrella*, 925 F.3d at 95-98; *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).

### 5. Retrospective Diagnosis

"The treating physician rule applies to physicians providing retrospective diagnoses. Retrospective diagnoses and opinions are those from a treating physician that relate to a time period in the past, including periods when the physician was not the treating source." *Lacava v. Astrue*, No. 11-cv-7727 (WHP) (SN), 2012 WL 6621731, at *13 (S.D.N.Y. Nov. 27, 2012), *report and recommendation adopted*, 2012 WL 6621722 (Dec. 19, 2012)

Although retrospective diagnoses do not command the same deference as contemporaneous diagnoses, they are afforded substantial weight unless contradicted by other medical evidence or by "overwhelmingly compelling" non-medical evidence. *Byam v. Barnhart,* 336 F.3d 172, 183 (2d Cir. 2003). "The fact that a treating physician did not have that status at the time referenced in a retrospective opinion does not mean that the opinion should not be given some, or even significant weight." *Monette v. Astrue,* 269 F. App'x 109, 113 (2d Cir. 2008) (ultimately finding "no error in the ALJ's refusal to accord [doctor's] retrospective opinion significant weight because there is substantial evidence that the opinion is contradicted by other evidence.").

Diagnosis of a claimant's condition for social security disability benefits may properly be made even several years after the actual onset of the impairment and such diagnosis must be evaluated in terms of whether, considered in light of entire record, it establishes physical impairment. *See Dousewicz v. Harris*, 646 F.2d 771 (2d Cir. 1981). However, a retrospective diagnosis without contemporaneous medical evidence may not support a finding of disability.

*Kelly v. Sullivan*, No. 88-cv-5717 (MJL), 1990 WL 96758, at *6 (S.D.N.Y. July 5, 1990). Particularly

in the context of psychiatric diagnoses, "long-after-the-fact diagnoses of a social security

disability benefits claimant's psychiatric conditions [were] more difficult and hence their

reliability lower than most diagnoses of physical ailments." *Schauer v. Schweiker*, 675 F.2d 55,

60 n.5 (2d Cir. 1982). While a retrospective opinion can prove the existence of a disability, the

retrospective opinion "must refer clearly to the relevant period of disability and not simply

express an opinion to the claimant's current status." *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142

(E.D.N.Y. 1999).

### 6.  Duty to Develop the Record

"It is the rule in [the Second] [C]ircuit that 'the ALJ, unlike a judge in a trial, must . . .

affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits

proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Echevarria v. Sec'y of*

*Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)); *see also* 20 C.F.R. §§ 404.1512(b),

416.912(b).

> "[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants. . .
> affirmatively develop the record in light of the essentially non-adversarial nature
> of a benefits proceeding." Social Security disability determinations are
> "investigatory, or inquisitorial, rather than adversarial." "[I]t is the ALJ's duty to
> investigate and develop the facts and develop the arguments both for and against
> the granting of benefits."

*Moran v. Astrue*, 569 F.3d 108, 112-13 (2d Cir. 2009) (internal citations omitted; second

alteration in original). This duty exists event when the claimant is represented by counsel. *Id*.

This duty is "particularly important" when the plaintiff alleges a mental illness. *Hidalgo v.*

*Colvin*, No. 12-CV-9009 (LTS) (SN), 2014 WL 2884018, at *4 (S.D.N.Y. June 25, 2014) ("This duty

to develop the record is particularly important where an applicant alleges he is suffering from a

mental illness[], due to the difficulty in determining 'whether these individuals will be able to adapt to the demands or 'stress' of the workplace.'" (quoting *Lacava*, 2012 WL 6621731 at *12). While the ALJ may not need to supplement the record when the record already contains sufficient evidence, the ALJ must seek out additional evidence where there are "'obvious gaps' in the administrative record." *Id*. (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

### A. Analysis of the ALJ's Decision

Plaintiff raised two issues with the ALJ's decision: that ALJ Pesaresi failed to duly consider Dr. Patel's evaluation about his psychological conditions, (ECF 2 at 10), and that ALJ Pesaresi failed to develop the record because Marcy's medical staff "knowingly and internationally [sic] destroyed" his medical records because of a lawsuit Plaintiff filed against an officer at Marcy. (ECF 32 at 1).

The Commissioner argues that ALJ Pesaresi properly denied Plaintiff's claims because there were no medically determinable impairments before Plaintiff reached 22 that could be established by medically accepted techniques. (ECF 25 at 7 (citing *Vella v. Comm'r of Soc. Sec.* 394 F. App'x 755, 757 (2d. Cir. 2010) (denying benefits where claimant failed to prove that he suffered from a medically determinable disability before 22)).

### 1. Substantial Evidence Supports the ALJ's Decision

Substantial evidence supports the ALJ's decision. Plaintiff failed to clearly present what disability, if any, arose before he was 22. Although it is clear that Plaintiff suffered a traumatic childhood, Plaintiff has not proffered clear testimony or medical evidence sufficient to support a medical finding of a childhood disability.

Further, nowhere in the record does Plaintiff present evidence that even if he had a childhood disability that he would be entitled to DAC benefits, namely that he was a minor who was financially dependent on his father at the time of his father's death. *See* 42 U.S.C. § 402(d)(1); *Abreu v. Colvin*, 152 F. Supp. 3d 166, 170 (S.D.N.Y. 2015) ("[A] child is considered dependent on the wage earner if, at the time of death, the wage earner was living with or contributing to the support of the child."). Joseph Caldwell passed in 2013, when Plaintiff was 49. At that age, Plaintiff could not be deemed a child. Further, Plaintiff testified and presented evidence at length describing his estrangement from his father who was not involved in his upbringing. (Tr. 76). Accordingly, substantial evidence supports the ALJ's denial of social security benefits.

2. **The ALJ Denied Plaintiff's Claims After Properly Developing the Record**

Plaintiff argues that the ALJ failed to properly develop the record.

The Commissioner requested Plaintiff's medical records, but only received medical records dating from 2006 to 2018. (Tr. 16, 78, 282-50). There were no recoverable childhood medical records. (Tr. 16). The ALJ also requested medical evidence from Marcy Correctional Facility, dating back to 1982 (when Plaintiff was 18), but received a response from the state that records, which would have been 30 years old, pertaining to "inmate Caldwell, Boisey 94A5323" have been destroyed. (Tr. 329-30).

At the administrative hearing, ALJ Pesaresi afforded Plaintiff multiple opportunities to discuss his medical history and questioned Plaintiff about his medical and social history. (Tr. 33-34, 38-39, 41-42). ALJ Pesaresi further explained the documents in her possession and the types of documents the SSA would need to obtain for proving a disability before the age of 22.

14

(Tr. 27-28). Plaintiff did not clearly testify to a disability that began before he turned 22 and resulting limitations. Nor did Plaintiff testify that he was a dependent of his father at any time.

After examining the record, I find that ALJ Pesaresi fully discharged her duty to develop the record. *See Messina v. Astrue*, No. 09-CV-2509 (SAS), 2009 WL 4930811, at *8 (S.D.N.Y. Dec. 21, 2009) (finding that ALJ developed the record when he discussed the symptoms with plaintiff at a hearing and requested medical records). Although ALJ Pesaresi did not have a fulsome medical history before her, that did not result from her failure to develop the record but rather the destruction of 30-year-old records before this litigation. *See Douglas v. Barnhart*, No. 05-CV-1838 (DC), 2006 WL 276731, at *8 (S.D.N.Y. Jan. 26, 2006) ("Though evidence submitted to the Appeals Council shows that the ALJ did not have records from all visits [Petitioner] made to the hospital, this does not appear to have resulted from the ALJ's failure to develop the record."); *Bronzene v. Astrue*, No. 10-cv-00967 (MAD), 2012 WL 602142, at *5 (N.D.N.Y. Feb. 23, 2012) (stating that the ALJ satisfied the duty to develop the record by requesting records of the claimant's counseling services from her school during 1969 to 1975 and receiving no evidence showing the claimant's alleged counseling history). Lastly, Plaintiff's argument that the staff at Marcy "knowingly and intentionally" destroyed his records is irrelevant, because the Commissioner cannot obtain records that were destroyed before this case was ever filed. Accordingly, I find that ALJ Pesaresi properly denied Plaintiff's claim because of the lack of a medically determinable disability before Plaintiff was 22.

Further, it would be futile to further develop the record. Even if Plaintiff could show that he had a childhood disability, Plaintiff was not a child who was dependent on his father at the

15

time of his father's death. No further development would change the outcome of a denial of DAC benefits.

### 3.    The ALJ Properly Considered Dr. Patel's Report

In a letter, Plaintiff also argues that ALJ Pesaresi failed to properly consider Dr. Patel's report as evidence of his psychological conditions between 1982 and 1986. (ECF 2 at 10). ALJ Pesaresi referenced Dr. Patel's report by noting that "the only medical evidence in the record for the relevant period is in a 2012 report documenting this subjective psychiatric history." (Tr. 12). ALJ Pesaresi decided that Plaintiff's subjective complaints and Dr. Patel's report, which did not offer a retrospective diagnosis, were insufficient to "establish medically determinable mental impairments during the relevant period." (Tr. 12).

Several factors weigh against assigning significant weight to Dr. Patel's report. *First*, Dr. Patel saw Plaintiff in 2012, twenty-six years after Plaintiff turned 22. Dr. Patel was not Plaintiff's treating physician during the relevant period. *Second*, Dr. Patel did not retroactively diagnose Plaintiff with a childhood disability. Dr. Patel even noted that "I could not elicit any [history of] of clear prior hypomanic, manic, or depressive episodes." (Tr. 257). *Third*, even if Dr. Patel's report could be considered a retrospective diagnosis, the reliability of this opinion is compromised due to the long period of time lapsed, the nature of the condition examined, and the manner of assessment. *Fourth*, even assuming that Dr. Patel's report provided a retrospective diagnosis (which it plainly did not), there is no contemporaneous medical evidence that shows that Plaintiff was suffering from a mental impairment from 1982 to 1986. *See Kelly*, 1990 WL 96758, at *6 (retrospective diagnoses without contemporaneous medical

evidence cannot support a finding of disability). Accordingly, ALJ appropriately assigned little weight to Dr. Patel's report.

### 4.    The ALJ Did Not Abuse Her Discretion

Plaintiff argued that the ALJ Pesaresi "abused her discretion" by ignoring the evidence. (ECF 2 at 8). Beyond this conclusory statement, Plaintiff did not proffer any legal or factual basis as to how the ALJ abused her discretion.

### III.    Conclusion

I have considered Plaintiff's remaining arguments and find them to be without merit, accordingly, for the foregoing reasons, the Commissioner's Motion for Judgment on the Pleadings (ECF 24) is **GRANTED**.

The Clerk of Court is respectfully requested to enter judgment dismissing the complaint, and close this case. The Clerk of Court is further requested to mail a copy of this Order to the *pro se* Plaintiff.

SO ORDERED.

_s/ Ona T. Wang_

Dated: October 21, 2020                                                    **Ona T. Wang**
          New York, New York                                    United States Magistrate Judge

17